**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| MARK SCHUSTER,<br><br>Plaintiff,<br><br>v.<br><br>PARK PLACE AT CENTLIVRE OWNERS ASSOCIATION INC., et al.,<br><br>Defendants. | CASE NO. 1:25-CV-15-HAB |

**OPINION AND ORDER**

Plaintiff Mark Schuster ("Schuster"), without a lawyer, filed suit against Park Place at Centlivre Owners Association Inc., Park Place Board of Directors, Park Place Management Company,[1] Dwyer Property Management LLC, and Brent Dwyer (collectively "Defendants") alleging Defendants refused to provide him reasonable accommodations under the Fair Housing Act. (ECF No. 1). Defendants have moved for summary judgment. (ECF No. 63). The Motion is now fully briefed (ECF Nos. 64, 72, 74) and thus ripe for ruling.

## I. FACTUAL BACKGROUND[2]

Schuster owns a condominium unit at Park Place at Centlivre in Fort Wayne, Indiana. (Defendants' Statement of Material Facts, ECF No. 65 ¶ 9; hereafter "SMF ¶ __"). Park Place at

---

[1] Though named as a party, Defendants point out that "Park Place Management Company" does not exist. Rather, Park Place is represented by an owners' association, and the facility is managed by Dwyer Property Management. (ECF No. 65 at 1 n.1).

[2] In their Reply brief, Defendants point out that Schuster's Response Brief and Affidavit were untimely, with the documents mailed a day after the April 9 response deadline and entered into the record a week late on April 16, 2026. (ECF No. 74 at 2). As such, Defendants request the untimely response and affidavit be stricken. Defendants also note that Schuster failed to comply with Local Rule 56-1(b) by neglecting to file a Response to Defendants' Statement of Material Facts, despite claiming in his Response brief that he would do so. *See* ECF No. 74 at 3 (citing Plaintiff's Response Brief, ECF No. 72 at 2). Defendants request that, because Schuster failed to comply with Local Rule 56-1(b), the facts set forth in the Defendants' Statement of Facts be deemed as true for the purposes of their Motion. *See id.* (citing *Thiele v. Norfolk & W. Ry.*, 873 F. Supp. 1240, 1243 (N.D. Ind. 1994)).

Centlivre Owners Association, Inc. ("Park Place") is an Indiana nonprofit corporation and the condominium owners' association for the Park Place buildings. (SMF ¶¶ 1, 2). Park Place is governed by the Declaration and a Code of By-Laws, which were last amended in 2005 and were in effect at all relevant times during this suit (*id.* ¶ 4) as well as a set of Rules and Regulations which govern all owners (*id.* ¶ 7; ECF No. 66-1, Decl. of Garry Carper[3] at 3; hereafter "Carper Dec. at __"). In addition to the owners' association, Park Place has a volunteer Board of Directors ("Board") who are elected in accordance with the By-Laws. (*Id.* ¶ 5). As of October 2021, Park Place retained Dwyer Property Management—with its president Brent Dwyer—to serve as the Park Place property manager. (*Id.* ¶¶ 11, 12).

In June 2021, Schuster purchased condominium unit B-211. (*Id.* ¶ 9). As per Park Place's Rules and Regulations, Schuster's purchase of the condominium included one assigned parking space. (*Id.* ¶¶ 8, 10). Schuster has continually parked in that assigned space since he purchased the unit in 2021. (*Id.* ¶ 10).

### *A. First HUD Complaint and Conciliation Agreement*

On June 14, 2022,[4] Schuster filed a Housing Discrimination Complaint with the United States Department of Housing and Urban Development ("HUD Complaint") against Park Place

---

While the Court appreciates that Schuster's Response was untimely and portions do not comply with the Local Rules, given Schuster's pro se status and the undisputed facts in the record, the Court need not address either request to resolve the present motion on the merits. That said, given that many of the "facts" asserted in Schuster's brief and affidavit are either legal arguments, unsupported by citations to exhibits, or unsupported by any admissible evidence, the Court takes the following facts largely from Defendants' Statement of Facts as well as facts taken from the exhibits the parties submitted. *See Hatter v. Williams*, 2019 WL 11555274, at *1 (C.D. Ill. July 8, 2019) (drawing same conclusion when pro se plaintiff failed to comply with court's local rules for responding to a statement of material facts).

[3] Garry Carper is the president of Green Gate Property Care, LLC, which has been the administrator at Park Place since January 2025. (ECF No. 66-1 at 2). Neither Carper nor Green Gate are parties here.

[4] Defendants dispute the filing date, claiming the initial HUD Complaint was filed on May 23, 2022. *See* ECF No. 75 at 2 (Defendants' Reply to Plaintiff's Statement of Material Facts; hereafter "Defs' Reply to Pl's SMF at __"). The

and Dwyer Property Management. (ECF No. 73, Schuster Affidavit ¶ 3; hereafter "Schuster Aff. ¶ __"; *see also* ECF No. 66-3 at 18). In that Complaint, Schuster stated he is a qualified individual with a disability who was denied a reasonable modification for his unit regarding access to his balcony. (SMF ¶ 14; ECF No. 66-3 at 28–29). Schuster filed an Amended HUD Complaint on October 23, 2022, making the same allegations about his balcony access, as well as alleging he was denied a reasonable accommodation because Park Place failed to install an automatic door at the entrances of the building in which his unit is located. (SMF ¶ 16; ECF No. 66-3 at 30–31). During discussions related to this Complaint, Schuster provided Park Place with a letter from his physician noting that Schuster struggles with severe joint pain and inflammation caused by Rheumatoid Arthritis, which causes mobility problems, including issues entering his condominium due to Schuster's inability to easily open and close the door. (ECF No. 73-2 at 13).

On September 6, 2023, Schuster, Park Place, and Dwyer Property Management entered into a Conciliation Agreement ("Agreement") covering Schuster's HUD Complaint and Amended HUD Complaint. (SMF ¶ 18; ECF No. 66-3 at 32–39). The Agreement states that Schuster alleged Park Place and Dwyer had discriminated on the basis of his disability by denying Schuster's reasonable modifications requests, "including a request to expand [Schuster's] balcony door to be flush with the floor and a request for automatic doors for the entrance closest to [Schuster's] unit," as well as retaliated against him by informing other tenants of the financial burden of Schuster's HUD Complaint. (ECF No. 66-3 at 33). The Agreement further notes that Park Place and Dwyer deny all allegations against them and that the parties "have agreed to settle the Complaints and the claims in the underlying action by entering into this Conciliation Agreement." (*Id.*) As part of the

---

Court finds this dispute immaterial to its analysis of Schuster's claims, but notes that Defendants have included the original HUD Complaint as an exhibit, which shows the filing date as June 14, 2022. *See* ECF No. 66-3 at 28.

Agreement, Park Place and Dwyer agreed to pay Schuster $5,000 as well as provide tentative approval of Schuster's balcony-modification request. (*Id.* at 36). For his part, Schuster agreed that:

> Complainant hereby forever waives, releases, and covenants not to sue the Department or Respondents, their heirs, executors, assigns, agents, employees, and attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD Case Numbers 5-22-6140-8 and 5-22-6141-8, or which could have been filed in any action or suit arising from said subject matter.

(*Id.* at 36). The Agreement was signed by the Fair Housing and Equal Opportunity Regional Director on September 8, 2023, at which point the Agreement became legally binding on the parties. (*Id.* at 39). In his affidavit, Schuster attests that he agreed to remove the automatic door opener accommodation "from my first charge of discrimination by way of a Conciliation Agreement" because "[i]t was not know [sic] if and when my Rheumatoid Arthritis would advance, thou [sic] at that time it had not progressed" to a debilitating degree. (Schuster Aff. ¶ 17).

### *B. Parking Space and Second HUD Complaint*

On March 15, 2024, Schuster emailed property manager Brent Dwyer requesting a change in his assigned parking space in order to accommodate his disabilities. (SMF ¶ 20; ECF No. 66-3 at 56). In his email, Schuster asked that he be allowed to switch his parking space with that of another unit, closer to the entrance of his building, and that Park Place install a handicapped parking placard with his unit number at the new space. (*Id.*) In the email, Schuster specifically requested the parking spot for unit B-105, with B-105's owner to move to the next spot over, B-408, with B-408 to be moved to Schuster's current spot on the other side of the lot. (*Id.*)

On March 21, 2024, Park Place's legal counsel replied to Schuster telling him that the Board had agreed to place a handicapped placard at Schuster's assigned spot. (SMF ¶ 23; ECF No. 66-3 at 59). As to the spot swap, the Board agreed to move his assigned parking space if the owners

of the other spots consented to the exchange. (*Id.*) To that email, Schuster replied on March 26, 2024, stating:

> I am, at this time, my counteroffer to the lackadaisical "Board," is I will now require a parking spot for wheelchair access per the American's With Disabilities Act specifications, including but not limited to the proper parking identification with blue lines, the curb barrier removed and with the proper easements, with the correct pitch, as I have a scooter and for when I use it I want to be able to load it without any obstacles getting it into a vehicle, and with the space being closest to the south entry of my building.

(ECF No. 66-3 at 58–59). Schuster's March 26 email did not specify his disability or the reason behind the new request for additional accommodations beyond his initial ask. (*Id.*) During his deposition, Schuster testified there had been no physical change necessitating those additional accommodations; instead, he made the additional requests because he believed that Park Place had lied to him about parking spaces being assigned to owners when they purchased their condominium units. (ECF No. 66-3, Deposition of Mark Schuster at 34–36; hereafter "Schuster Dep. at __").

On April 18, 2024, the Board responded to Schuster, through counsel, stating that it had reached out to the owners of the units with the assigned parking spaces Schuster mentioned in his proposed exchange, and while the owner of the specific spot he wanted to be assigned to had not consented to the exchange,[5] the owner of the adjacent spot was amenable to the switch. (SMF ¶ 29; ECF No. 66-3 at 62). The Board indicated it was willing to facilitate that exchange if Schuster wished to move forward, including mounting the handicap parking placard if Schuster provided it to Dwyer. (*Id.*) As to the additional accommodation requests made in Schuster's March 26 email,

[5] According to Park Place counsel's email, the owner of the unit with the assigned spot Schuster requested is a female who, due to safety concerns, was not in a position to exchange parking spaces. (ECF No. 63-3 at 62).

counsel requested that Schuster "please provide information outlining the disability-related need for this request and how the proposed modification would meet that need." (*Id.*)

On April 24, 2024, Schuster succinctly replied: "I am refusing the offer." (*Id.*) Schuster made no counterproposals, and there were no further negotiations. *See* Schuster Dep. at 40:3–5 ("Q: [Y]ou didn't have any additional proposals to them after April 24, 2024, correct? A: They didn't have proposals to me back."). On June 13, 2024, Schuster filed a new HUD Complaint alleging he had been denied reasonable accommodations and been retaliated against because (a) Park Place refused to install an automatic door at the entry to his building and (b) Park Place denied his request to have a reserved handicap space nearest the entry to his building. (SMF ¶ 32; ECF No. 66-3 at 40–41). This HUD Complaint was dismissed by the Metropolitan Human Relations Commission on October 21, 2024 (ECF No. 66-3 at 52) and Schuster filed the Complaint in this suit on January 17, 2025 (ECF No. 1).

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials it its own

pleading but must "marshal and present the court with the evidence [they] contend will prove [their] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th. Cir. 2010). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). To survive summary judgment, "the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322–23)

## III. DISCUSSION

In his Complaint, Schuster alleges the Defendants failed to provide him with reasonable accommodations under the Fair Housing Act. Schuster alleged two specific violations: (1) Defendants' refusal to install an automatic door at the entrance of the building where Schuster's condominium unit is located; and (2) Defendants' failure to exchange Schuster's current assigned parking space with a different assigned space closer to the building.

The FHA requires "reasonable accommodations in rules, policies, practices, or services" as may be "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 438 (7th Cir. 1999). To sustain a claim for failure to accommodate under the FHA, the plaintiff must show that: "(1) []he suffers from a disability or is associated with someone with a disability; (2) defendant knows of the disability or reasonably should be expected to know of it; (3) an accommodation may be necessary to give the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make a reasonable accommodation." *Stevens v. Hollywood Towers & Condo.*

*Ass'n*, 836 F. Supp. 2d 800, 808 (N.D. Ill. 2011); *see also United States v. WHPC-DWR, LLC*, 391 F. App'x 733, 736 (7th Cir. 2012) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.4d 737, 749 (7th Cir. 2006)) ("To prevail on an FHA accommodation claim, a disabled plaintiff must establish that he requested and was denied an accommodation that was both reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling.").

As to the first claim, Defendants argue that any claim related to the automatic door was released as part of a 2023 Conciliation Agreement between the parties, barring Schuster from raising the claim here. Although Schuster's brief in response is at times near indecipherable, it appears to the Court that he is conceding that he is barred from asserting the automatic door opener claim based on the binding terms of the Conciliation Agreement. *See* ECF No. 72 at 4 ("The release in the Conciliation Agreement, like a release in any settlement agreement, contemplated that it would cover Plaintiff's claim relating to the automatic door opener, was a [sic] binding on Plaintiff, and, as a result he is barred from pursuing the claim."). This concession seems to be repeated in his affidavit. *See* Schuster Aff. ¶ 17 ("I did agree to remove the [automatic door] accommodation from my first charge of discrimination by way of a Conciliation Agreement.").[6] Given this concession, the Court finds it is undisputed that he is barred from bringing any claim related to the automatic door. As such, Defendants are entitled to summary judgment on the first claim.

For the second claim, Defendants contend the evidence establishes they did not refuse to accommodate Schuster's request but were engaged in the interactive process for accommodation when Schuster wholly withdrew from negotiations and filed this suit. Schuster provides a

---

[6] To the extent that Schuster asserts that Defendants have failed to comply with the terms of the Conciliation Agreement, *see* ECF No. 72 at 5, that claimed breach is not before this Court and is immaterial to whether the Agreement barred him from bringing the automatic door opener claim here.

convoluted argument in response,[7] but as best the Court can tell, he appears to believe that *Defendants* were the ones to drop the ball on negotiations after Schuster sent his curt email refusing Park Place's counteroffer of the parking spot next to the one Schuster requested. In reply, Defendants recount their willingness to work with Schuster on providing a reasonable accommodation—albeit not the exact accommodation he requested—but that "[i]n refusing the offer without a counterproposal or an explanation, Schuster ended the Partys' [sic] discussions regarding an accommodation," meaning Defendants never "refused to accommodate" him. *See* ECF No. 74 at 10–11.

The Court agrees that Schuster has not established that Defendants ever refused to accommodate him. Rather, the evidence shows Defendants were actively engaged in working with Schuster to find an appropriate accommodation: the Board agreed to installing a handicap placard for him and agreed to allow the exchange of parking spaces, if Schuster provided the placard (which he offered in his initial email request) and if Schuster could get the consent of the current owners of the units with those assigned spots. The Board then took the process a step further by reaching out to those owners and, when the spot Schuster wanted was unavailable due to safety concerns, secured the consent of the owner of the adjacent spot on Schuster's behalf. Schuster then rejected that offer outright, without explaining why the offered spot was unreasonable or else offer a counterproposal.

---

[7] For instance, Schuster's concluding statement for this claim reads: "As a result, the designated evidence does not show that Park Place refused to make the requested accommodation, and it does not show that Plaintiff's final demand was necessary to afford him a equal opportunity to use and enjoy his condominium unit. What suggested does not county [sic]? The refusal of Plaintiff's offer was sent on to the Board, by its counsel, and it as [sic] just ignored." (ECF No. 72 at 6). Here, Schuster seems to *agree* with Defendants that he has not established that they refused to accommodate him.

Due to Schuster's pro se status, however, the Court will address the larger theme of his apparent argument on the merits, rather than solely accepting this concession as a binding statement.

As an initial matter, Schuster is not entitled to receive the exact accommodation he wanted. Rather, the Fair Housing Act entitles a disabled individual to *reasonable* accommodation. *See Gile v. United Airlines, Inc.*, 95 F.2d 492, 499 (7th Cir. 1996) (holding that, for an ADA claim—analyzed under the same standard as an FHA failure to accommodate claim[8]—"[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation"); *see also McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice."); *Hamedl v. Verizon Commc'ns, Inc.*, 557 F. App'x 68, 70 (2d Cir. 2014) ("As to [Plaintiff's] claims under the [ADA], the undisputed evidence demonstrates that he was offered a reasonable accommodation for his alleged disability—that is, a shift beginning at 5:30 a.m. . . . [Plaintiff's] preference for a midnight shift does not render unreasonable an otherwise reasonable accommodation."). At no stage has Schuster provided any explanation to the Defendants—or the Court—as to why the adjacent spot was not an acceptable alternative.

More importantly, though, while Schuster properly requested accommodation from Park Place, "accommodation requests simply open an 'interactive process.'" *Hatter v. Williams*, 844 F. App'x 870, 874 (7th Cir. 2021). And determining the correct reasonable accommodation "is a process, not a one-off event." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters.*, 834 F.3d 760, 764 (7th Cir. 2016).

---

[8] Courts in this Circuit and others regularly cite to ADA and Rehabilitation Act cases in Fair Housing Act "failure to accommodate" analyses because "the requirements for showing failure to reasonably accommodate are the same under the ADA and the FHAA . . . ." *Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003).

Defendants draw a parallel to a Ninth Circuit case to illustrate there was no "refusal" or "denial," and the Court agrees it is instructive.[9] In *Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2003), to accommodate for the plaintiff's disability, a condominium association issued a temporary exemption to a rule otherwise forbidding pets while they "investigated and decided what to do." *Id.* at 1179. But while that investigation process was ongoing, the plaintiff went ahead and filed a housing discrimination complaint with the HUD, and then filed a lawsuit before awaiting the outcome of the HUD complaint process. *Id.* at 1178. There, the Ninth Circuit found the answer to be "simple": the association never issued a decision with finality "and thus never refused to make the requested accommodation, which is one of the essential elements of the FHA claim." *Id.* at 1179. And as the district court in that case rightly stated, Defendants in these cases must be "given an opportunity to make a *final* decision with respect to Plaintiff's request . . . ." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003), *aff'd sub nom. Dubois*, 453 F.3d 1175 (emphasis added); *see also Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285–86 (11th Cir. 2014) ("The FHA does not demand that housing providers immediately grant all requests for accommodation."). Here, the record is clear that it was Schuster, not Defendants, who shut that interactive process down before the Board could issue a final decision.

Ultimately, the Court finds no evidence that Defendants ever denied Schuster's request for accommodation in the form of an exchange in parking spaces. Instead, when Schuster did not receive the spot he wanted, he voluntarily abandoned the negotiation process in favor of litigation. Because Schuster cannot establish that Defendants denied his request, he cannot establish a

---

[9] Schuster summarily states that *Dubois* is not instructive because "[t]his case does not involve service animals." (ECF No. 72 at 5). That this case is about a parking space and not a service animal is unimportant to the analysis; rather, what matters is the fact that no "final" decision on the accommodation request had been issued.

required element to prevail on a "failure to accommodate" claim under the FHA. As such, Defendants are entitled to summary judgment on this claim, as well.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 63) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants.

**SO ORDERED** on September 28, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT